Samuel G. Damren et al. *vs.* George E. Trask.

Androscoggin.   Opinion November 21, 1907.

*Evidence.   Descriptive Answers.*

In the case at bar, a bundle of clapboards was introduced at the trial as an exhibit by the defendant as a sample of the clapboards put up by the plaintiffs under their contract with the defendant.   The plaintiffs claimed that the clapboards exhibited did not come from those furnished by them. Upon this issue a witness was asked as to the appearance of the clapboards shown compared with other clapboards manufactured by the plaintiffs which he had seen before.   The witness answered "They were not standard as far as dressing and grading."   The same witness was also asked the following question :   "What as compared to the clapboards you saw at the Moody barn, for instance, that were showed you by Mr. Trask?" The reply was "I thought they were an older lot."   *Held :* That these answers were descriptive only.

On exceptions by defendant.   Overruled.

Action of covenant broken.   Plea, the general issue with brief statement as follows :

"And by way of brief statement, by leave of court pleaded, the defendant says that the plaintiffs have not on their part observed and performed the contract in said writ declared on particularly in that said clapboards were not manufactured, dressed and bundled in accordance therewith and were not merchantable ; that said con-

tract was in June, 1904, mutually abandoned by the plaintiffs and this defendant and that at said last named time said contract was terminated and the said defendant for valuable consideration released therefrom.

"Wherefore he prays judgment."

Tried at the April term, 1907, of the Supreme Judicial Court, Androscoggin County. Verdict for plaintiffs for $2021.54.

The bill of exceptions states the case as follows:

"This is an action of covenant founded upon a contract under seal, dated April 5, 1904: wherein the plaintiffs agreed to sell and the defendant to take and pay for all six inch clapboards which the plaintiffs then had on hand at their mill at Newcastle, and all that they should saw prior to May 15th, 1904, of four specific grades: extras, clears, second clears and extra number ones, at a flat price of forty dollars per thousand at the mill.

"The plaintiffs were to dress said clapboards as soon after May 15th as they were in suitable condition to work, and to do all work in a workmanlike manner; the clapboards to be taken away from the mill by the defendant promptly when bundled and ready for delivery.

"The defendant on the thirteenth day of June, 1904, having prior to that date received clapboards under the contract, refused to receive any more.

"The plaintiffs on December 30, 1905, brought suit to recover for the clapboards received and not paid for, and damages for refusing to receive the remainder of the clapboards sawed by the plaintiffs prior to the date specified in the contract; the number so claimed by the plaintiffs to be 148,225. The amount due on the basis of the contract price for clapboards received and not paid for was one thousand three hundred and four dollars ($1304.00). The verdict was for the plaintiffs for two thousand twenty one dollars and fifty-four cents ($2021.54).

"The defendant contended that the clapboards were not put up in accordance with the contract, and because thereof were worth much less than the clapboards for which he had contracted, in that they were all dressed too thin; that they were not properly sorted,

many clapboards of a lower grade being in bunches of a higher grade, and many clapboards of a higher grade being in bunches of a lower grade; and that many clapboards were put up in the various bunches branded of the grades provided for in the contract, but which were in fact of lower grades than any provided for in the contract and were clapboards not purchased by the defendant at all. The plaintiffs contended that the clapboards were in all respects in accordance with the contract.

"The defendant introduced evidence to prove that early in June, 1904, he took promiscuously from the clapboards that had been delivered to him under the contract, four bunches of each grade which he sent to Charles S. Wentworth & Co. at Boston, as samples on which they were to sell for him the clapboards he had purchased.

"Charles S. Wentworth wrote the defendant a letter in which he stated objections to the clapboards. Bundles of these clapboards were returned from Wentworth and delivered through several express offices to the court house at Auburn, but without coming into the possession of the defendant. Some of these bundles were present at the court house at the time of trial, and one bundle was introduced as an exhibit by the defendant as a sample of the clapboards put up by Damren Bros. under the contract. While in the express office at Wiscasset, some of the Wentworth bundles, including the one introduced had been opened and examined by one of the defendant's witnesses, who testified he only opened one at a time and restored them to the condition as found.

"Charles S. Wentworth, who afterwards sold clapboards subsequently put up by Damren Bros., and which the plaintiffs claim should have been received by the defendant, was presented by the plaintiffs as a witness.

"Wentworth had during the spring of 1904, seen some of the clapboards which Damren Bros. had delivered to the defendant under the contract, being taken by the defendant to the place where they were stored, known as the Moody barn. The plaintiffs argued that the clapboards which were sent to Wentworth as samples were not the clapboards delivered under the contract by Damren Bros. The court stated to the jury, referring to the above described clap-

boards and others presented : 'Now an important question arises there, raised by the plaintiff, and that is, are those clapboards a part of the Damren lot?' And speaking particularly of the clapboards which Wentworth saw at Sheepscot, in connection with those sent him to Boston, parenthetically said, 'whether they (the clapboards sent to Boston) were of the same sort is for you to say.' No witness testified in contradiction of the defendant's evidence that they were such clapboards, except the witness Charles S. Wentworth ; who was allowed against the objection and exception of the defendant as tending to show the clapboards were of a different lot to answer the following questions :

"Q. What have you to say as to the appearance of the clapboards compared with other clapboards that the Damren Bros. manufactured that you have seen before?

"A. They were not standard as far as dressing and grading.

"Q. And now I want to ask you the question—the general appearance has been covered particularly by the letter, but I want to ask you—what as compared to the clapboards you saw at the Moody barn for instance, that were showed you by Mr. Trask.

"A. I thought they were an older lot.

"The plaintiffs upon the expression of the foregoing opinion, to which the witness Wentworth was allowed to testify, contended that the clapboards marked as an exhibit were not the Damren Bros. clapboards, manufactured in 1904, and to the admission of such questions and answers, the defendant duly excepted."

The Wentworth letter referred to in the bill of exceptions was made a part of the exceptions, and so much of said letter as relates to the clapboards is as follows :

"In regard to the pine clapboards would say, that we have examined them very carefully. The writer wanted to send a bunch of extras to a customer for a sample and he went through all the bunches which you sent, but was unable to secure more than 16, which could be pronounced 1st class extra clapboards.

"We find that one great fault with these clapboards is the dressing. Almost every board that we have seen so far has been more

or less roughly dressed.    It looks as if the boards had been planed before they were dry, then again the sorting is not what it should be.

"We found very good clear clapboards in the 2d clears and very good 2d clears in the extra No. 1 and vice versa.

"These clapboards cannot be recommended as being extra quality and manufacture.    We are sending you two clapboards which were taken out of two bunches, which were marked clears.    These clapboards aside from the dressing we consider poor for the grade.    We think it would be for your advantage to see your men who are putting up these clapboards for you and see that the dressing and sorting is done a little more carefully.    We expect an order for one or two cars of your pine clapboards very soon."

This case has once before been before the Law Court, but on other points.    See 102 Maine, 39.

*Oakes, Pulsifer & Ludden*, for plaintiffs.

*Arthur S. Littlefield and Charles L. Macurda*, for defendant.

SITTING :    EMERY, C. J., WHITEHOUSE, STROUT, PEABODY, SPEAR, CORNISH, JJ.

STROUT, J.    By contract between the parties plaintiffs were to sell and defendant to buy an amount of clapboards.    A part of the clapboards were received by the defendant, and he refused to receive any more.    The suit is for the price of the clapboards received by defendant and for damages for refusal to receive the balance. Bundles of clapboards have been sent to Wentworth, at Boston, and one bundle was introduced as an exhibit by the defendant as a sample of the clapboards put up by the plaintiffs under the contract.    Plaintiffs claimed that the clapboards exhibited did not come from those furnished by them.    Upon this issue, Wentworth was asked as to the appearance of the clapboards shown compared with other clapboards manufactured by the plaintiffs which he had seen before, to which he answered "they were not standard as far as dressing and grading."    And another question, "What, as compared to the clapboards you saw at the Moody barn, for instance,

that were showed you by Mr. Trask?"   To which he answered "I thought they were an older lot."   Some of the clapboards received by defendant had been stored in the Moody barn.

Both these questions were objected to, and being admitted, exception was taken, which is now presented to this court.

The issue was not as to the quality of the bundle presented as an exhibit.   A comparison was asked as to this bundle and other clapboards manufactured by plaintiffs.   The witness' answer was descriptive only.   It was not a matter requiring expert knowledge. "Not up to standard (of plaintiffs' other clapboards) as to dressing and grading."   Suppose he had said one was rough and the other smooth,— one dry and the other wet,— one sound and the other decayed,—one new and the other old.   Either of these answers involved as much of an opinion as the one given.   It was a practical description that could properly be given by any man using his eyesight.   The exceptions refer to Wentworth's letter, in which it was said "almost every board that we have seen so far has been more or less roughly dressed.   It looks as if the boards had been planed before they were dry."   This letter was in the case without objection.

The answer to the second question, "I thought they were an older lot," is only descriptive.   It is equivalent so saying they appeared older, certainly competent as a description.   The objections are hypercritical.

*Exceptions overruled.*